IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAUN FAULEY, individually and as the representative of a class of similarly-situated persons, ) ) ) ) | |
| Plaintiff, ) ) | Case No. 15-cv-10735 |
| v. ) ) | Honorable Virginia M. Kendall |
| DRUG DEPOT, INC., a/k/a APS PHARMACY, and JOHN DOES 1-10, ) ) ) | Magistrate Mary Rowland |
| Defendants. ) | |

**DEFENDANT APS PHARMACY'S**
**RULE 12(b)(1) MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**
**DUE TO LACK OF ARTICLE III STANDING AND MEMORANDUM IN SUPPORT**

Drug Depot, Inc. d/b/a APS Pharmacy ("APS Pharmacy"), by undersigned counsel, hereby requests that this Court enter an order dismissing Plaintiff's Class Action Complaint in its entirety and with prejudice. In support of this Motion, APS Pharmacy states as follows:

**INTRODUCTION**

Until recently, cookie-cutter complaints related to the alleged receipt of "junk faxes" avoided subject matter jurisdiction challenges because of the belief that courts would analyze the "particularized" and "concrete" injury requirements for Article III standing as a one-part inquiry. The Supreme Court's May 16, 2016 decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), however, changed this analysis. *Spokeo* makes it clear that to establish an injury-in-fact—the principal element needed for this Court to establish its subject matter jurisdiction—a plaintiff must satisfy a two-part analysis that demonstrates that the alleged injury is both (1) particularized, and (2) concrete. *Id*. at 1545. The Supreme Court made it clear that these are separate elements and that the analyses for these two elements are entirely different. *Id*. at 1548. In the case at bar,

Plaintiff's Complaint fails to plead any facts or make any allegations whatsoever that support an inference that Plaintiff has actually suffered an injury-in-fact. Without allegations sufficient to infer that Plaintiff suffered such an injury, this Court lacks jurisdiction and the Complaint must be dismissed.

The Telephone Consumer Prevention Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005 ("JPFA"), makes it unlawful to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless…the unsolicited advertisement is from a sender with an established business relationship with the recipient; the sender obtained the number of the telephone facsimile machine through…the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, [or from] a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution." 47 U.S.C. § 227 (b)(2)(C), *et seq.*

The JFPA requires senders to give notice of a mechanism that recipients can use to request to opt-out of receiving future faxes. The unsolicited advertisement must contain "a notice that is clear and conspicuous and on the first page of the unsolicited advertisement…[that] states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time not to exceed 30 days…is unlawful. *Id.* The notice must contain "a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement. 47 U.S.C. § 227 (b)(2)(D), *et seq*.

I.  **PLAINTIFF'S CASE**

Plaintiff's single claim under the TCPA stems from the alleged receipt of a fax that he purportedly received from APS Pharmacy more than two and a half years ago, on September 30, 2013. Dkt. 1 ¶ 11. Plaintiff contends the fax was unsolicited and claims that the plainly conspicuous opt-out language failed to comply with the JFPA. *Id.* ¶ 29. On the basis of this fax, Plaintiff filed the instant action on behalf of himself and an alleged class of similarly situated persons. *Id.* ¶ 19. Plaintiff's alleged class is not limited to recipients of unsolicited faxes; instead Plaintiff seeks to also include the recipients of solicited faxes that have an existing business relationship with APS Pharmacy. *Id.* However, all Plaintiff's individual claims and the claims he wishes to assert on behalf of his purported class are based on same claims of a bare-boned violation of the TCPA/JFPA. *Id.* These claims are not sufficient to establish a concrete injury was suffered two and a half years ago.

Plaintiff's Complaint rests completely on allegations that APS Pharmacy violated the TCPA/JFPA. Plaintiff vaguely alleges that APS Pharmacy sent unsolicited faxes and the fax did not contain a legally compliant opt-out statement, but both allegations are untrue. Indeed, APS Pharmacy receives permission prior to sending faxes and the fax attached to Plaintiff's Complaint as Exhibit A, conspicuously displays on the bottom of the only page of the fax the required opt-out mechanism that complies with 47 U.S.C. § 227 (b)(2)(D), *et seq.*, and 47 CFR § 64.1200 *et seq. See* Dkt. 1, at Exhibit A. Instead of providing specific allegations, Plaintiff instead relies on a vaguely drafted Complaint that cannot satisfy the Article III standing analysis required under Supreme Court precedent and clarified under *Spokeo*.

3

In addition, Plaintiff has used similarly deficient pleadings in at least eight nearly identical TCPA class actions in the Northern District of Illinois filed since March 2015.[1] Plaintiff is a serial filer who has repeatedly attempted to strong-arm companies that legitimately use faxes into agreeing to multi-million dollar class settlements. Such settlements benefit class counsel more than they benefit potential class members. In each case, Plaintiff raises nearly identical bare-boned allegations of hyper-technical violations of the statute, all-the-while not being held to at least the minimum requisites of Article III standing.

## II.     ARGUMENT IN SUPPORT OF DISMISSAL

### A.     Subject Matter Jurisdiction Supported by Standing is Required of All Article III Courts.

Supreme Court precedent establishes that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). The plaintiff must have: (1) suffered an injury in fact that is concrete and particularized, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id*. at 560–561; *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180–181 (2000) ("[courts] have an obligation to assure …Article III standing at the outset of the litigation"). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (standing cannot be "inferred argumentatively from averments in the pleading[s],…facts supporting Article III jurisdiction must appea[r] affirmatively from the record…[a]nd it is the

---

[1] Shaun Fauley is the named plaintiff in at least seven other TCPA complaints that have filed in the District Court for the Northern District of Illinois Eastern Division - Case Nos.: 1:15-cv-02171; 1:15-cv-05581; 1:15-cv-02529; 1:15-cv-09406; 1:15-cv-02544; 1:15-cv-02170; and 1:15-cv-09125. *See also* case number 14-CH-00001353, in the Circuit Court of the 19th Judicial District, Lake County, Illinois.

burden of the party who seeks the exercise of jurisdiction in his favor").

The first "requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.,* 555 U.S. 488, 497 (2009) ("[i]t makes no difference that the procedural right has been accorded by Congress"); *see also Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("[i]n no event, however, may Congress abrogate the Article III minima: [a] plaintiff must always have suffered a distinct and palpable injury to himself . . . that is likely to be redressed if the requested relief is granted."); *Raines v. Byrd,* 521 U.S. 811, 820 n.3 (1997) ("[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 487 n.24 (1982) ("[n]either the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III."); *Warth v. Seldin*, 422 U.S. 490, 508 (1975) (emphasizing the need to "allege specific, concrete facts demonstrating that the challenged practices harm[ed] him").

The foregoing Supreme Court precedent establishes that it is Plaintiff's burden to allege distinct and palpable, specific and concrete facts that demonstrate that he has suffered an injury. Plaintiff has not met the foregoing requirement. Plaintiff's Complaint fails to allege a single verifiable fact the he suffered any actual injury, and on that basis alone Plaintiff's case should be dismissed. At a minimum, this Court should require Plaintiff to plead specific and distinct facts that demonstrate the concrete nature of the injury he alleges he suffered at the direction of APS Pharmacy when he received a one-page fax on one occasion.

**B.** *Spokeo, Inc. v Robins,* **Further Affirmed that Injury-in-Fact Must Supported by a Concrete Injury and not Merely a Technical Violation of Statute.**

In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) plaintiff Thomas Robins alleged that Spokeo Inc. ("Spokeo"), a people search engine, was a "consumer reporting agency" under the Fair Credit Reporting Act ("FCRA"). *Id*. at 1544. Robins discovered that his Spokeo-generated profile contained inaccurate information and that Spokeo had published allegedly false information about him on its website, including incorrect reports that he was married, was in his fifties, had children, held a job, was relatively affluent, and had a graduate degree. *Id*. In response to Spokeo's publication of this purportedly inaccurate information, Robins filed a putative class action alleging a willful violation of various provisions of the FCRA and sought the maximum statutory damages. *Id*. In his complaint, Robins alleged that the inaccurate report affected his employment opportunities, as well as his credit and insurance. *Id*.

The district court dismissed Robins' complaint, focusing on the lack of alleged harm and found that Robins lacked standing because he had not properly pleaded an "injury-in-fact" as required by Article III of the Constitution. *Id*. On appeal, the Ninth Circuit Court of Appeals reversed the district court's ruling, finding that the FCRA does not require a showing of actual harm when a plaintiff sues for willful violations of the statute. *Id*. at 1545. The Ninth Circuit held that a violation of a statutory right created by the FCRA is a "concrete, *de facto* injur[y]" sufficient to confer standing. *Id*. In so holding, the Ninth Circuit found that Robins had a personal interest in the handling of his credit information, and that misreporting Robins' credit information was a violation of that interest sufficient for him to claim injury-in-fact. *Id*. at 1546. Although the Ninth Circuit acknowledged that there are constitutional limits on Congress's power to confer standing by statute, it did not find those limits exceeded by its interpretation of the FCRA. *Id*.

6

The Supreme Court granted certiorari to address whether Robins had standing to maintain an action in federal court against petitioner Spokeo under FCRA. In a 6 to 2 majority opinion, the Supreme Court vacated the Ninth Circuit's decision, holding that although the Ninth Circuit's analysis addressed the "particularized" prong, it failed to consider the "concrete" requirement of Article III standing. *Id*. at 1548. Under the Supreme Court's analysis, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. Moreover, referring to definitions of "concrete" in the standard context, the Supreme Court reasoned that term "concrete" must convey the "usual meaning of the term—'real,' and not 'abstract'" *Id*. The Supreme Court further concluded that "[c]oncreteness, therefore, is quite different from particularization." *Id*.

The Supreme Court explained that Congress, through passing a statute, did not necessarily create an injury that was sufficient to confer Article III standing. As the Court noted, "[c]oncrete" is not necessarily synonymous with a "tangible" injury, but Congress' role in identifying and elevating intangible harms does not mean that a plaintiff will automatically satisfy "the injury-in-fact requirement whenever a statute purports to authorize that person to sue to vindicate that right." *Id*. at 1549. The *Spokeo* Court concluded that Article III standing requires a concrete injury even in the context of a statutory violation. *Id*. For that reason, a plaintiff cannot satisfy the injury-in-fact requirement of Article III merely by alleging, as Plaintiff did here, a bare procedural violation, divorced from any concrete harm. *Id*.

Similarly, in *Sprint Communications Co. v. APCC Services, Inc.,* 554 U.S. 269 (2008), the respondents sued pursuant to the private right of action under the Communications Act of 1934. While the Court did not question that the plaintiffs had been *assigned* causes of action, it still required them to establish standing under Article III. *Id*. at 273-74. Against this backdrop, it is axiomatic Congress cannot eliminate the injury-in-fact requirement by designating the experience

7

of a legal violation a "*per se*" injury, irrespective of its effect on any individual plaintiff. To recognize such fictitious injuries would effectively eliminate the "hard floor" requirement that Article III imposes and would allow Congress to evade the separation-of-powers limits that Article III protects. *Summers,* 555 U.S. 488, 497 (2009); *cf. City of Boerne v. Flores,* 521 U.S. 507, 536 (1997).

The Supreme Court has "always insisted on strict compliance with th[e] jurisdictional standing requirement." *Raines,* 521 U.S. at 819. "In an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so." *Arizona Christian Sch. Tuition Org. v. Winn,* 563 U.S. 125, 146 (2011). Here, the class-action context of this case underscores the importance of requiring the allegation (and, eventually, proof) of a well-defined injury-in-fact.

### C. Plaintiff's Complaint Does Not Allege a Concrete Injury.

Plaintiff's Complaint does not establish Article III standing for him or the alleged class. As set forth more fully below, the Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(1) because Plaintiff has failed to alleged that he suffered any actual injury as a result of the single-page fax that he alleges he received. Moreover, Plaintiff does not even plead sufficient facts to demonstrate that he actually received the fax that was attached as Exhibit A to the Complaint. The Complaint and Exhibit A do not contain any confirmation number showing that Plaintiff actually received the fax via a fax machine. *See* Dkt. 1 at Exhibit A. Further, Plaintiff's Complaint fails to even list the number for fax machine that accepted the fax. These deficiency alone are enough to grant a motion for dismissal for lack of standing, let alone a 12(b)(6) for failure to state a claim.

The Complaint lacks the necessary allegations to establish Article III standing under the pleading standard articulated in *Spokeo* and earlier precedent. Plaintiff's 36 paragraph Complaint largely regurgitates Plaintiff's counsel's interpretation of Fed. R. Civ. P. 23 requirements, and recites Plaintiff's perspective of statutory provisions and FCC interpretive guidance regarding the TCPA/JFPA framework. Dkt. 1 ¶¶ 1-36. Paragraphs 1-2 of the Complaint, if taken as true, make only allegations that APS Pharmacy sent the fax in violation of the statute. Dkt. 1 ¶¶ 1-2. Paragraph 3 recites vague and hypothetical possibilities if someone receives an unsolicited fax and does not contain an allegation that demonstrates a concrete or real injury suffered by Plaintiff or, for that matter, any member of the class. Dkt. 1 ¶ 3. Paragraphs 4-10 recites the JFPA framework, statutory relief, elements of the Court's jurisdiction, and give a description of the parties. Dkt. 1 ¶¶ 4-10. Again, the foregoing paragraphs fail to allege a concrete or actual injury. Paragraphs 11-16 describe an alleged violation of the statue, the fax, and the class allegation that APS Pharmacy may have sent the fax to more than 40 other recipients. Dkt. 1 ¶¶ 11-18. Paragraphs 19-35 make vague class allegations, recite the statutory frameworks for TCPA/JFPA, and again describe the fax, but do make contain a single distinct, well-defined allegation that Plaintiff suffered an actual concrete injury. Dkt. 1 ¶¶ 19-35.

Paragraph 36 of the Complaint suffers the same deficiency as it merely makes vague allegations regarding annoyance, toner, and paper usage without making a direct and palpable allegation of an actual, real and concrete injury that Plaintiff has suffered, particularly that Plaintiff suffered from the receipt of a one page fax. Dkt. 1 ¶ 36. Even taking these allegations as true, Plaintiff does not allege the direct palpable, real actual, well-define concrete injury required to establish Article III standing. Further, the allegation regarding paper, toner, machine use, and time do not apply class wide (and may not even apply to Plaintiff) as those allegations would not apply

to those individuals who receive faxes via digital cloud services that do not use paper toner or machines.

Plaintiff's entire Complaint is devoid of any allegation that Plaintiff has suffered an injury-in-fact. At best, Plaintiff has made a basic allegation that APS Pharmacy committed a procedural violation of statute without providing any allegation that would support Article III standing. As such, Plaintiff's Complaint does not demonstrate that this Court has subject matter jurisdiction. As previously noted, standing cannot be "inferred argumentatively from averments in the pleading[s],…facts supporting Article III jurisdiction must appea[r] affirmatively from the record…[a]nd it is the burden of the party who seeks the exercise of jurisdiction in his favor." *FW/PBS, Inc.*, 493 U.S. at 231. Accordingly, the Complaint does not establish a constitutionally sufficient TCPA/JFPA case or controversy that can withstand the "concrete" injury analysis required under *Spokeo* and prior precedent and the case should be dismissed.

### III. CONCLUSION

For the foregoing reasons, Drug Depot, Inc. d/b/a APS Pharmacy respectfully requests this Court: (i) dismiss Plaintiff's Complaint based on the law set forth in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) and prior Supreme Court precedent, and (ii) to award all other relief deemed equitable and just.

Dated:  June 21, 2016	Respectfully Submitted,

**DRUG DEPOT, INC. D/B/A APS PHARMACY**


By: /s/  David A. Wheeler
       One of its Attorneys

David A. Wheeler (6270817)
Douglas F. McMeyer (6293348)
**CHAPMAN SPINGOLA, LLP**
190 South LaSalle Street, Suite 3850
Chicago, Illinois 60603
(312) 606-8657
dwheeler@chapmanspingola.com
dmcmeyer@chapmanspingola.com
*Attorneys for Defendant Drug Depot, Inc.*

11

## **CERTIFICATE OF SERVICE**

      I, David A. Wheeler, an attorney for Drug Depot, Inc., d/b/a APS Pharmacy, hereby certify that on June 21, 2016, I caused the foregoing to be filed electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

      /s/ David A. Wheeler