IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHUAN FAULEY, individually and on behalf of a class of similarly-situated persons, <br><br> *Plaintiff*, <br> v. <br><br> DRUG DEPOT, INC., a/k/a APS PHARMACY and JOHN DOES 1-10, <br><br> *Defendants*. | No. 15 C 10735 <br><br> Hon. Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Shaun Fauley ("Fauley") is a veterinarian who received one facsimile ("fax") regarding animal medicine that he did not solicit and so he sued the defendant alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). (Dkt. No. 1, ¶¶ 2, 11; *see also* Dkt. No. 1-1.) Based on this one fax, Faueley seeks to represent a class of individuals like himself who received the same fax. (Dkt. No. 93, ¶¶ 4-5.) He alleges millions of dollars in damages and has moved for class certification. (Dkt. No. 94 at 1, 6-7; *see also* Dkt. No. 1, at 13.) In support of his motion for class certification, Fauley filed the expert report of Robert Biggerstaff who concluded that there were in excess of 78,000 similar facsimiles sent by the Defendant. (Dkt. No. 94-3.) The Defendant moved to exclude the expert report under *Daubert* alleging that it is merely cumulative and the conclusions are within the ken of the average juror and therefore not helpful, and as such should be excluded pursuant to Fed. R. Evid, 702. (Dkt. No. 112.) The Court denies Defendants' *Daubert* motion and grants Plaintiff's Motion for Class Certification. [93; 112.]

1

## BACKGROUND

Fauley is a veterinarian who received a fax advertisement from Defendant Drug Depot, Inc. a/k/a APS Pharmacy ("APS") on September 30, 2013 soliciting a variety of veterinary medicine compounds made by APS. (Dkt. No. 1, ¶ 11; *see also* Dkt. No. 94-8, ¶ 8; Dkt. No. 94, at 3; Dkt. No. 94-2.) Fauley, an Illinois resident, alleges violations of the TCPA as amended by the Junk Fax Prevention Act, and now moves to represent a class of individuals seeking damages as a result of receiving unsolicited fax advertisements from APS, a Florida corporation that compounds pharmaceuticals for sale by veterinarians. (Dkt. No. 93, ¶ 6; Dkt. No. 1, ¶¶ 2, 4, 8-9.) Fauley claims that APS sent 78,536 faxes over 23 separate "broadcasts" between February 2012 and April 2015, and that he specifically received the fax advertisement on September 30, 2013. (Dkt. No. 94, at 1.)

Fauley proposes two specific classes described as follows:

**Class A**
All persons or entities who were successfully sent a Fax stating, "APS Pharmacy," and containing the phrase "Fax Order To: (727) 785-2502," on July 22, 2013, and on September 30, 2013.

**Class B**
All persons or entities who were successfully sent a Fax stating, "APS Pharmacy," and containing the phrase "Fax Order To (727) 785-2502," on February 27, 2012, March 7, 2012, March 30, 2012, June 4, 2012, August 20, 2012, January 25, 2013, February 11, 2013, February 18, 2013, February 28, 2013, March 25, 2013, March 26, 2013, July 1, 2013, July 22, 2013, August 5, 2013, September 30, 2013, March 18, 2014, August 8, 2014, April 27, 2015.

(*Id*. at 2.) The advertisements, sent via fax using a third-party broadcasting company named ProFax, Inc. ("ProFax"), are order forms listing veterinary drugs with lines where the purchaser can enter an order quantity, as well as space at the bottom for the purchaser's veterinary information. (Dkt. No. 94-2.) Located at the bottom of the fax is opt-out language that reads: "To opt out from future faxes go to www.removemynumber.com and enter PIN# 10172, or call

877-286-5812. The recipient may make a request to the sender not to send any future faxes and that failure to comply with the request within 30 days is unlawful." (*Id*.)

Fauley moved to certify a class of veterinarians who similarly received the same fax and attached as an exhibit an expert report ("the Report") prepared by Robert Biggerstaff ("Biggerstaff"). (*Id*. Ex. 3.) Biggerstaff, a certified forensic computer examiner, prepared the Report by reviewing the Complaint and its accompanying exhibits, a hard-drive file containing fax submission invoice data, and twenty-two other fax logs supplied by ProFax. (*Id*. at 5.) Biggerstaff concluded that the materials he reviewed are authentic records, that APS successfully transmitted 5,985 faxes on September 30, 2013, that the invoice data and fax logs show ProFax sent an additional 70,000-plus error-free fax transmissions between 2012 and 2015, and that the data reviewed corresponds with the fax in the Plaintiff's complaint. (*Id*. at 13.)

## **The TCPA**

The TCPA makes it unlawful to send "unsolicited advertisements" via fax. 47 U.S.C. § 227(b)(1)(C). Exceptions include that a sender may submit unsolicited advertisements if there is an established business relationship ("EBR") with the recipient, if the sender obtained the recipient's number through voluntary communications or a directory, or if the advertisements contain a proper "opt-out" notice. *Id*. at (i)-(iii). An unsolicited advertisement means "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id*. at (a)(5). The opt-out notice on unsolicited advertisements must be clear and conspicuous, contain a domestic contact number of the sender for the recipient to contact, and a cost-free mechanism by which the recipient may opt-out of the solicitation. *Id*. at (D)(i)-(iv); *see also Holzman v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013) (the fax must inform the recipient how to stop receiving future messages). It is not unusual to deal with class

certification in matters filed under the TCPA because the main questions – such as whether the faxes were advertisements - are fairly common to all of the potential class members. *Holtzman*, 728 F.3d at 684.

## DISCUSSION

I.  **Defendants' Request to Exclude Expert Testimony**

APS moves to strike the Report and testimony by Biggerstaff as lacking scientific reliability and because the expert opinion provides cumulative evidence already available in the record. (Dkt. No. 112, at 5-9.) APS further contends that the information in the Report is not helpful because it does not provide information beyond the ken of the average juror and is therefore unnecessary. (*Id*. at 8.)

Under Federal Rule of Evidence 702, a witness who is qualified as an expert may testify in the form of an opinion if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact," and if the "testimony is the product of reliable principles and methods." *See Daubert v. Merrell Dow Pharmaceuiticals, Inc.*, 509 U.S. 579, 588 (1993). The district court acts as a gatekeeper in determining whether and how to measure the reliability of the proposed expert testimony. *U.S. v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145 (1999). A district court should conduct a *Daubert* analysis prior to class certification where an expert's opinion testimony is critical to class certification. *See Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010) (the district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on class certification where the expert testimony is critical to class certification).

As a starting point, the parties do not dispute that Biggerstaff has specialized knowledge – specifically with respect to facsimile technology, as well as, "technical specifications and

details of facsimile transmissions." *See* (Dkt. No. 112, at 6; Dkt. No. 125, at 3.) *see also Am. Honda Motor Co.*, 600 F.3d at 817 ("a district court must make the necessary factual and legal inquiries and decide all relevant contested issues prior to certification" – including admissibility issues). Solely in dispute is whether the expert testimony is necessary and reliable for use at this early stage of litigation and whether it would be helpful in certifying the class. *Id*. at 816 ("the court must also resolve any challenge to the reliability of information provided by an expert if that information is relevant to establishing any of the Rule 23 requirements for class certification").

APS moved to exclude the Report because the expert's "opinion" merely condenses and recites the number of fax transmissions sent by APS which is evidence that the parties already have in their possession and the expert analysis does not furnish additional information that would be outside the grasp of the average juror. (Dkt. No. 112, at 6-7; 8-9.) However, the report also details how faxes are sent and how a party determines whether a fax was successfully transmitted. (Dkt. No. 94-3, at 7-13.) This type of evidence matters because the successful transmission of a fax is a crucial part of finding a party in violation of the TCPA. 47 U.S.C. § 227(a)(5) (defining "unsolicited advertisement" as one that is actually transmitted). Biggerstaff further discusses the types of data analyzed, including a comma-separated values (.csv) format file of fax logs and 23 ProFax invoices. (*Id*. at 6-7.) While the invoices are fairly straight-forward in that they show a record of fax transmissions sent by ProFax for any given client (APS in this context), the .csv file is more complex and requires a more nuanced understanding of the metadata within the file. Additionally, these files may not always readily identify the difference between a fax that is successfully transmitted as opposed to those that are not. Therefore, the detailed inclusion of the process, coupled with the explanation of which faxes were sent

successfully, provides an understanding of exactly the number of fax advertisements sent by ProFax on behalf of APS. This kind of information aids in the determination of whether numerosity of a putative class is satisfied, which is a critical prerequisite to class certification under Rule 23(a).

Additionally, Fauley alleges that APS no longer has any of its own records of client consent logs or proof of EBRs (established business relationships), or that this information was lost at some point in time, and that those records would verify whether APS authorized the broadcast of fax advertisements. (Dkt. No. 122 at 3; *see also* Dkt. No. 126, at 1-2.) What is more, this type of expert report has been accepted in similar TCPA complaints in the past. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324, at *1 (N.D. Ill. 2009) (permitting the use of Robert Biggerstaff as an expert in a TCPA class action involving "junk faxes" as well as the use of his expert report); *Savanna Group, Inc. v. Trynex, Inc.*, 2013 WL 66181, at *3-4 (N.D. Ill. 2013) (same). Biggerstaff's background and history qualify him to give an expert opinion based on his specialized knowledge and skills; his Report aids the Court (the trier of fact on the issue of class certification) in determining how many individuals may be in the class; the testimony is based on sufficient facts and data; the testimony rests on reliable principles and methods of data recovery and analysis; and Biggerstaff applied those principles accordingly. Fed. R. Evid. 702. Therefore, the motion to exclude the Report and the use of Biggerstaff's testimony at trial is denied.

## II. Challenges to Class Certification

The district court has broad discretion to determine whether to certify a class action. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir. 1997). As the moving party, Fauley must show that class certification is appropriate by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-47 (2011) (identifying the burden and

6

standard for a moving party seeking class certification); *see also Bell v. PNC Bank, Nat. Ass'n* 800 F.3d 360, 373 (7th Cir. 2015) (same). As the class representative, Fauley must also prove he shares the same interest and the same injury as the class members. *Wal-Mart Stores*, 564 U.S. at 347.

Under Fed. R. Civ. P. 23, Fauley must first satisfy four prerequisites Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation. *Bell*, 800 F.3d at 373. After he has met this initial burden, Fauley must also satisfy one of the subsections under 23(b), and show that the class is identifiable. *Id.*; *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (a class must be ascertainable in order to exist). APS challenges all three of these requirements, *see* (Dkt. No. 110, at 3, 7, 13), necessitating review by the Court in order determine whether to grant class certification.

### a. Rule 23(a) Prerequisites

Starting with the prerequisites, Fauley must show numerosity, common questions of fact and law, typicality of claims or defenses, and that he (and his counsel) will provide adequate representation. Fed. R. Civ. P. 23(a).

#### i. Fauley Satisfies Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is typically satisfied where a potential class representative can identify at least 40 members. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2013); *see also Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969). Applied here, Fauley alleges that APS sent thousands of fax advertisements over twenty-three different occasions in violation of the TCPA. This is supported by evidence in the Biggerstaff Report indicating 6,600 successful fax transmissions sent on either July 22 or September 30, 2013, in addition to roughly another 71,000 faxes sent

7

between 2012 and 2015. Although this approach does not specifically name or identify 40 or more class members, a plaintiff is not required to do so in order to establish numerosity. *See Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989); *see also G.M. Sign*, 2009 WL 2581324, at *4 (N.D. Ill 2009) (Kendall, J.) (numerosity is satisfied through this exact same kind of evidence and analysis in a matter involving the TCPA and "junk faxes"). The Court may apply common sense in determining that there exist at least 40 class members when a defendant successfully transmits more than 78,000 individual fax advertisements during a given period of time. *See, e.g. Ringswald v. County of DuPage*, 196 F.R.D. 509, 511 (N.D. Ill. 2000) (a district court judge is permitted to use common sense when determining numerosity).

### ii. Fauley Satisfies Commonality

Commonality requires the Plaintiff to identify common questions of law or a nucleus of fact that are "apt to drive the resolution of the litigation." Fed. R. Civ. P. 23(a)(2); *Wal-Mart*, 564 U.S. 338, 350 (2011); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Here, Fauley alleges that APS sought out a third party mass-advertiser to send out faxed advertisements to thousands of phone numbers. Fauley supports this allegation with evidence of the September 30, 2013 advertisement that he received from ProFax, of which he is one of almost 6,000 numbers listed on the fax invoice. He further supports this with information from the Report of another twenty-two fax broadcasts by ProFax on behalf of APS and resulting in over 78,000 successful faxes. This qualifies as "standardized conduct towards a proposed class." *See Id.* Furthermore, the claim stems from the same federal statute, and identifies four questions common to all class members: (1) whether the faxes in question are "advertisements;" (2) whether APS is a "sender" of those faxes; (3) whether the faxes were solicited or unsolicited; and (4) whether APS "willfully or knowingly" violated the TCPA. In sum, Fauley's evidence in the complaint and the motion for class certification "demonstrate that the class members have

suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50 (quoting *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). Accordingly, Fauley meets the commonality requirement.

### iii. Fauley Satisfies Typicality

Under 23(a)(3), the claims or defenses of the representative parties must be typical to the class. This prerequisite is closely related to commonality, but "typicality" requires enough "congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Viewed in another way,

> "The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims."

*See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). As noted under the commonality analysis, the fax received by Fauley on September 30, 2013 was one of almost 6,000 sent out by ProFax that day on behalf of APS. Then, Fauley further alleges that APS sought similar services from ProFax on twenty-two other occasions and that resulted in the successful transmission of over 78,000 fax-advertisements. Where claims stem from the same *event*, *practice*, or legal theory, they are said to be typical. *Keele v. Wexler*, 149 at 595 (emphasis added). In addition to factual similarities between Fauley and other class members, every alleged claim is a violation of the same federal statute, the TCPA. Further, APS cannot escape typicality by claiming an affirmative defense, based on a potential EBR between Fauley and APS, because such a defense in not applicable at this stage of the proceedings. *See Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996); *see also G.M. Sign*, 2009 WL 2581324,

9

at *5 (typicality is not focused on defendant's actions and so defenses against particularized members cannot defeat it at this stage).

*iv. Fauley Satisfies Representation*

Rule 23(a)(4) permits a defendant to file objections based on potentially disqualifying conflicts of interest by either the putative class representative or the firm representing that individual. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This prerequisite consists of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

Plaintiff, who is a veterinary doctor, received a fax advertisement from APS, which he claims was unsolicited. He is precisely the type of professional that APS would target with such advertisements. He does not indicate any animosity towards other potential class members and stated that he understands his obligations as a class representative during his deposition. Furthermore, counsel for Plaintiff appears to have diligently worked on his behalf for over two years of litigation, including defending against a motion to dismiss, as well as conducting discovery and by hiring an expert. There do not appear to be any particular conflicts of interest between the Plaintiff and the putative class, or on the part of Plaintiff's counsel.

**b. The Class is Identifiable**

To achieve ascertainability the Court looks to three common problems tending to frustrate attempts at certification: vagueness, classes defined by subjective criteria, and classes defined in terms of success on the merits. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659-60 (7th Cir. 2015). In other words, a class must be identifiable based on its class definition. *Oshana*, 472 F.3d at 513; *see also Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) (noting that the obligation to define a class falls upon a judge in accordance with Rule

23(c)(1)(B)). The class lacks the definiteness required for certification where there is no way to readily ascertain who is a member of the class. *Jamie S. v. Milwaulkee Pub. Schools*, 668 F.3d 481, 495 (7th Cir. 2012).

But the classes suggested by Fauley are not vague. They specify one group of members who received a fax-advertisement from APS via ProFax on July 22, 2013 and September 30, 2013, with an APS fax number included to place a purchase; and a second group of members with the same specifications but on twenty-three specific dates. While a class that is defined too vaguely fails to satisfy the "clear definition" component of ascertainability, *Mullins*, 795 F.3d at 659 (citing *Young v. Nationwide Mutual Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012)), these definitions are based upon evidence obtained by Fauley, and are short and succinct. While there may be other issues on the horizon as to whether the faxes were authorized under the TCPA and guiding regulations, for the purpose of named an identifiable class there is no issue of vagueness.

Furthermore, Fauley's class definitions are not based on any subjective criteria such as a class-members' state of mind, a type of class definitional approach that has flunked certification in other cases. *See, e.g.*, *Simer v. Rios*, 661 F.2d 655, 668-69 (7th Cir. 1981) (denial of class certification where the class definition turns, in part, on the class members' state of mind). Rather, this case involves a definition of classes that focus more succinctly on "conduct (an objective fact) rather than state of mind, which this Circuit finds preferable when defining a class. *Mullins*, 795 F.3d at 661.

Finally, APS argues that the class definition is structured as a "fail-safe class" and therefore impermissibly defines the class in terms of success on the merits. *See* (Dkt. No. 110, at 8-9); *see also Mullins*, 795 F.3d at 660. While other circuits appear to find this permissible, *see, e.g.*, *In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012) (affirming fail-safe class

certification), this Circuit holds such definitions to be unfair to the defendant. *See Mullins*, 795 F.3d at 660; *Messner*, 669 F.3d at 825 ("[s]uch a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment"). Fauley's two class definitions are specific, are not defined in terms of success on the merits, and focus on objective actions taken by APS. As noted above, the classes are defined objectively by whether or not a potential class member received a fax advertisement from the Defendants on particular dates between 2012 and 2015 that was unsolicited.

### c. Satisfaction of Rule 23(b)(3)

Fauley must also satisfy one of the Rule 23(b) requirements for class certification. *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (class certification requires showing one of listed the Rule 23(b) conditions). The Plaintiff here cites to 23(b)(3) whereby the Court must establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 443 (7th Cir. 2015). While issues of permission (to send the faxes) and potentially pre-existing EBRs are relevant to this case, these defenses do not foreclose class certification because those issues are equally relevant to both Fauley and the putative members of the class. Furthermore, APS has not provided sufficient evidence to indicate that prior permission or EBR existed aside from verbal statements by APS employees during their depositions.[1]

---

[1] The Court is aware of the motion for a Rule 23(d) order as a result of the actions by APS whereby Fauley alleges that APS is contacting potential class members with a request to obtain "consents" but that they are not informing the putative class members of the underlying lawsuit and class action.

12

Fauley properly identifies the issue of prior permission as the main question common to the entire class. Additionally, "the predominance test is meant to test whether proposed classes are sufficiently cohesive to warrant adjudication by representation, but it scarcely demands commonality as to all questions." *Comcast Corp. v. Behrend*, 569 U.S. 27, 39-40 (2013). It is unlikely that particularized issues between various class members will obstruct the primary issues raised by the Plaintiff – whether APS sent advertisement faxes, whether they did so without prior consent, and whether APS knew that such actions violated the TCPA. APS argues they are not liable under the TCPA because they had permission to send the faxes or that the faxes contained a valid opt-out clause. As such, liability is the predominant issue and, when issues relates to potential liability are common to the class, a class action will achieve economies of time and expense. *Id*. at 41-42.

## **Conclusion**

Based on the foregoing, the Court denies Defendants' motion to exclude the expert report and testimony, and grants Plaintiff's motion for class certification. [93] [112]

_____
Hon, Virginia M. Kendall
United States District Judge

Date: January 29, 2018