**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SHAUN FAULEY, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | No.    1:15-cv-10735 |
| Plaintiff, | ) | |
| v. | ) | Hon.   Virginia M. Kendall |
| | ) | |
| DRUG DEPOT, INC. a/k/a APS PHARMACY, | ) ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**</u>
<u>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**</u>
<u>**SETTLEMENT AND NOTICE TO THE SETTLEMENT CLASS**</u>

Plaintiff, Shaun Fauley ("Plaintiff"), on behalf of himself and a class of similarly-situated persons (identified herein as the "Settlement Class"), pursuant to Fed. R. Civ. P. 23 (e), hereby submits this memorandum in support of his motion and respectfully requests that the Court enter an order (1) preliminarily approving the parties' proposed class action Settlement Agreement (the "Agreement") attached hereto as <u>Exhibit A</u>, (2) preliminarily approving the forms of Class Notice attached as Exhibit 2 to the Agreement and approving the dissemination to the known Settlement Class by facsimile, and if unsuccessful after three (3) attempts, by postcard via U.S. mail, and (3) setting dates for opt-outs, objections, and a fairness hearing. A proposed Preliminary Approval Order is also attached as Exhibit 1 to the Agreement.

## I.    STATEMENT OF ISSUES PRESENTED

A.    Is the proposed Settlement Agreement fair, adequate, and reasonable?

B.    Does the proposed notice plan satisfy the requirements of Federal Rule of Civil Procedure 23(e)(1) and due process?

## II.    BACKGROUND

A.      On behalf of himself and the certified class, Plaintiff alleges that Defendant, Drug Depot, Inc. a/k/a APS Pharmacy ("Defendant"), violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by faxing advertisements without prior express invitation or permission or a TCPA-compliant opt-out notice. Defendant has denied any violation of the TCPA and JFPA, and all liability.

B.      Plaintiff determined that Defendant sent 78,536 advertisements via facsimile from February, 2012 through April, 2015. Among the recipients are Plaintiff and 7,481 other persons who were successfully sent Defendant's fax advertisements. The potential exposure in this case is at least $39,268,000.00.   Such a judgment would likely drive Drug Depot into insolvency and the Class would likely end up with nothing.

C.      Without admitting or conceding any of Plaintiff's allegations, Defendant, by and through its insurer, MSA Insurance Company, has agreed to settle with Plaintiff and the Class by paying $6,000,000.00 without any chance of reversion to fund the settlement.   MSA has three (3) insurance policies, each with a $2,000,000.00 limit which provides coverage for TCPA claims. All of this sum will be paid out; none will revert to Defendant.

D.      The proposed settlement was negotiated among the parties, through counsel, in good faith and at arms' length. The Parties attended a full-day mediation with the Hon. James Holderman (Ret.) of JAMS and continued negotiations for weeks thereafter, which resulted in this Agreement, and also after considering the legal and factual issues presented in this action, the risks and expenses involved in pursuing the action to conclusion, the possible outcomes of one or more procedural and substantive appeals, and the likelihood and costs of collecting a possible judgment from Defendant directly.

III.    **TERMS OF THE SETTLEMENT**

The Agreement's key terms are:

A.    <u>Certification of the Class for Settlement Purposes</u>. The parties stipulate to certification pursuant to Rule 23 (b) (3) of a class defined in the same way the Court defined the class for litigation purposes in its January 29, 2018 Order (Dkt. No. 133):

<u>**Class A**</u>

All persons or entities who were successfully sent a Fax stating, "APS Pharmacy," and containing the phrase "Fax Order To: (727) 785-2502," on July 22, 2013, and on September 30, 2013.

<u>**Class B**</u>

All persons or entities who were successfully sent a Fax stating, "APS Pharmacy," and containing the phrase "Fax Order To: (727) 785-2502," on February 27, 2012, March 7, 2012, March 30, 2012, June 4, 2012, August 20, 2012, January 25, 2013, February 11, 2013, February 18, 2013, February 28, 2013, March 25, 2013, March 26, 2013, March 27, 2013, March 28, 2013, March 29, 2013, May 14, 2013, June 24, 2013, July 1, 2013, July 22, 2013, August 5, 2013, September 30, 2013, March 18, 2014, August 8, 2014, April 27, 2015.

B.    Excluded from the class are (a) Defendant and its present and former officers, directors, shareholders, employees, and their successors, assigns, and legal representatives, (b) the Court and its officers, and (c) any person or entities who timely and validly exclude themselves from this class.

C.    <u>Class Counsel and Representative Plaintiff</u>. The parties have agreed that, as previously certified by the Court, Plaintiff will be the Class Representative and Brian J. Wanca of Anderson + Wanca will be Class Counsel.

D.    <u>Monetary Relief to the Members of the Settlement Class</u>. Defendant has agreed to create a settlement fund of $6,000,000.00 (the "Settlement Fund"). *Id.*, ¶ 6. Pursuant to the terms of the settlement, each known class member will be sent a check for his/her/its *pro rata* share of the Settlement Fund, after subtracting the amounts the Court awards to Class Counsel for attorney's fees expenses, and any incentive award the Court awards to Plaintiff. "Class Members" need not submit

a claim form to be mailed a check for their share of the Settlement Fund. Because the identity of the Class is known, no claim form is necessary.

       E.     <u>Class Notice</u>. The parties have agreed to notify the Class Members about the settlement by sending notice by facsimile and if transmission by facsimile is unsuccessful after three (3) attempts, then by postcard notice substantially in the form of the Notice that was attempted to be sent by facsimile, via U.S. mail. The parties also have agreed to post the Complaint, Settlement Agreement, Preliminary Approval Order, and Class Notice on the Settlement Website.

       F.     <u>Settlement Administration</u>. By agreement of the parties, Class-Settlement.com will serve as the third-party claims administrator (the "Settlement Administrator"), and will: (1) issue the notice of the preliminary approval of the settlement to the Class Members by facsimile and as necessary by postcard notice substantially in the form of Exhibit 2 to the Settlement Agreement via U.S. mail where the facsimile transmission of the Notice was unsuccessful after three attempts, to the addresses indicated in the class list received from Defendant comparison with the U.S.P.S. National Change of Address Database; (2) create and maintain the settlement website; (3) receive exclusions or opt outs submitted in response to class notice; (4) issue checks to the Class members; and (5) issue a check for the remaining monies to the *cy pres* recipient as approved by the Court. Class-Settlement.com will be paid from the Settlement Fund.

       G.     <u>Uncashed Checks</u>. By agreement of the parties, and subject to the Court's approval, any money from any class members who cannot be found or from uncashed checks will be paid as *cy pres* to Equal Justice Initiative, a 501(c)(3) charitable organization, subject to approval by the Court. *Id.* ¶ 6. The Notice specifically informs Class members that if they do not negotiate their settlement checks within 90 days of the date on the check that they surrender their rights to a payment and the amount of their payment will be automatically donated to Equal Justice Initiative.

       H.     <u>Settlement Class Opt-Out and Objection Rights</u>. A class member may seek to be

excluded from the settlement and this action by opting out of the Settlement Class within the time period set by the Court. *Id.*, Ex. 2. The parties suggest a 60-day period after notice. Any member who opts out of the Class shall not be bound by any of the Court's orders or the terms of the Agreement and shall not be entitled to any of the benefits set forth in the Agreement. Any class member may also object to the Agreement in writing within the time period set by the Court. *Id.* The parties again suggest a 60-day period for objections.

I.      Releases. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Agreement, in this action against Defendant and the other released parties about fax advertisements sent by fax or on behalf of Defendant from July 28, 2011 through July, 2015. *Id.*, ¶ 16.

## IV.    PLAINTIFF RESPECTFULLY REQUESTS THAT THE COURT GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

A.      The proposed settlement is within the range of possible approval.

A district court's review of a proposed Class Action Settlement is typically a two-step process. *Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305,314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The first step is to hold a preliminary fairness hearing prior to notifying the class members about the proposed settlement. *Id.* The purpose of that preliminary hearing is to determine whether the proposed settlement is "within range of possible approval." *In re General Motors Corporation Engine Interchange Litigation*, 594 F.2d 1006, 1124 (7th Cir. 1979). *See also Carnegie v. Household International, Inc.* 371 F. Supp. 954, 955 (N.D. Ill. 2005) (hearing is to "determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.").

B.      Standard for judicial evaluation and approval.

A court may approve a settlement if the settlement "is fair, reasonable, and adequate." Fed.

R. Civ. P. 23 (e) (1) (C). See *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom*, 309 F.3d 978, 986 (7th Cir. 2002). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. See *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). If the Court finds that the settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to notify the class members about the settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

    C.    <u>Factors considered in determining whether a settlement is fair, reasonable, and adequate.</u>

The factors considered are: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby v. Bayh*, 75 F.3d 1191, 1198-1199 (7th Cir. 1996).

In this case, these factors show that the proposed settlement is within the range of possible approval. Defendant has agreed to create a settlement fund of $6,000,000.00. Each Class Member who does not opt-out of the Class will be mailed a check for his/her/its pro rata share of the Settlement Fund less the attorney's fees, expenses, and incentive award approved and awarded by the Court. *Id*., ¶ 8. Consequently, the Court should permit the parties to notify the Class, and the Court should schedule a fairness hearing to determine whether to finally approve the settlement.

    <u>Strength of the Case on the Merits</u>. Plaintiff believes that he has a strong case. The Court certified the Class and the matter would proceed to a summary judgment and if denied, be set for trial. Defendant believes that it would prevail on its defenses including that the Class members

6

provided consent to receive advertisements by fax, that the Court should apply *Bristol Meyers* and limit the class to Illinois residents only, that Defendant has an EBR, that it had consent of the Class because consent was obtained through the EBR, and therefore the Class should be decertified. Defendant filed a Motion for Reconsideration of the Court's January 29, 2018 Order granting class certification which was denied. Defendant also file a Rule 23(f) petition requesting the Seventh Circuit to review the decision granting class certification, which was also denied. Defendant asserts that it would be successful in getting substantial evidence of consent by Class members to receive faxes, which up to this point the Court has excluded, as evidence on damages which would then later justify a motion for decertification of the Class. While Plaintiff does not believe Defendant will succeed in obtaining the decertification of the Class or that it will prevail on any of the other defenses and issues it has raised, nevertheless, results are unpredictable. Defendant has retained defense counsel that are funded by Defendant's insurer and who have indicated they will vigorously defend this case if a settlement is not achieved.

The TCPA gives private citizens a right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or $500.00 in damages, or (iii) obtain an injunction plus damages. Thus, a total victory by the Class could result in a judgment amount of $39,268,000.00 (based on the full size of the Class) which sum is far beyond Defendant's ability to pay and beyond the limits of insurance coverage available through its insurer, MSA. In the settlement, each Class Member who does not opt-out of this proposed settlement will be mailed a payment of their share of the Settlement Fund. Any money remaining in the Settlement Fund as a result of checks issued to claimants but not cashed is to be donated to Equal Justice Initiative. None of the Settlement Fund will revert to or be retained by Defendant.

<u>Defendant's Ability to Pay</u>. Defendant's ability to pay a settlement or judgment is a key driving factor in settlement. Plaintiff has concluded that it is unlikely that Defendant would be able

to pay significantly more than the $6,000,000.00 settlement fund, which is being funded through its Insurer, MSA Insurance Company, without creating significant financial difficulties for its continued operations. MSA has three (3) insurance policies, each with $2,000,000.00 in limits, which provide coverage for this case. MSA is paying the full policy limits on each of the three (3) insurance policies.

Complexity, Length and Expense of Further Litigation. Class action litigation, especially cases involving numerous or complex issues, is time consuming in terms of both pretrial and trial work. Because of the significant costs that class actions can involve for both parties, courts consider the savings that would result from settlement of the case. *Isby*, 75 F. 3d at 1198-99 (holding that settlement was outcome "comparable if not far superior," to that which the plaintiff might achieve at trial because continuous litigation would require "resolution of many difficult and complex issues, and would entail considerable additional expense") (quoting *Tafia v. Bayh*, 746 F. Supp. 723, 727 (N.D. Ind. 1994)). There are risks attendant to further litigation in this matter, and substantial delay and expense. The decision to settle is reasonable in light of the risks of continued litigation. After the conclusion of the trial, there would undoubtedly be appellate practice. Settlement avoids all of that time, expense, and uncertainty.

Opposition to the Settlement. Plaintiff does not know of or anticipate any opposition to the settlement, especially since all Class Members who do not opt out will be mailed a check.

Absence of Collusion and Opinion of Counsel. The Agreement resulted after a mediation with Hon. James Holderman (Ret.) and arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this case. Plaintiff's attorneys believe this settlement is fair, reasonable, and adequate. Plaintiff's attorneys have litigated TCPA class actions since 2003. They have been appointed class counsel in several such cases. *See Shaun Fauley v. Heska Corporation,* 1:15-cv-02171 (N.D. Ill. 2018); *G.M. Sign,*

*Inc., v. Stealth Security Systems, Inc.*, No. 1:14-cv-09249 (N.D. Ill. 2018); *Avio v. Alfoccino, Inc.*, No. 10-cv-10085 (E.D. Mich. Jan. 18, 2018); *Imhoff Investment, LLC v. Sammichaels, Inc.*, No. 10-cv-10996 (E.D. Mich. Nov. 2. 2016); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, No. 12-cv-2257 (N.D. Ohio, Feb. 9, 2016); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich.); *Hinman v. M&M Rental, Inc.*, Case No. 06-CV-1156 (N.D. Ill.); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill.); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis.); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08-CV-5953 (N.D. Ill.); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09-CV-1399 (N.D. Ill.); *Holtzman v. CCH*, 07- CV-7033 (N.D. Ill.); *CE Design, Ltd. v. Exterior Systems*, Inc., 07-CV-66 (N.D. Ill.). Additionally, Plaintiff' counsel have successfully negotiated numerous class-wide settlements in TCPA cases. *Id*. Under these circumstances, the Court should give weight to Class Counsel's opinions about the settlement.

    <u>The Stage of Proceedings and the Amount of Discovery Completed</u>. This case is sufficiently advanced for the parties to be able to appreciate the strengths and weaknesses of their respective cases and of factors such as the Defendant's ability to pay a settlement or judgment. Plaintiff's counsel served extensive written discovery requests and took 5 depositions and defended 1, employed a computer forensic expert and reviewed electronic databases and electronic transmission reports regarding the facsimiles sent by Defendant. Plaintiff was able to identify the Class members through discovery, and identify the circumstances surrounding the subject faxing campaign. As a result, the parties have compiled necessary discovery, and exchanged documents and data sufficient for Plaintiff and its attorneys to evaluate the strength of this case.

    <u>Public Interest</u>. Courts have held that a settlement of class action litigation serves the public interest. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980).

Based upon the foregoing, and the judgment of experienced class counsel, Plaintiff requests that the Court preliminarily approve the settlement.

**V.     AT FINAL APPROVAL CLASS COUNSEL WILL ASK THE COURT TO APPROVE DEFENDANT'S AGREEMENT TO PAY CLASS COUNSEL'S FEES AND EXPENSES, AND AN INCENTIVE AWARD TO PLAINTIFF**

At final approval, Class Counsel will request that the Court approve Defendant's payment to Plaintiff in the amount of $15,000.00 from the Settlement Fund for serving as the class representative.

Incentive fees are appropriate to reward class representatives who have pursued claims on behalf of the class. *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992). "In deciding whether such an award is warranted, relevant factors include the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the Plaintiff expended in pursuing the litigation." *See Cook v. Niedert, et al.*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Plaintiff was the catalyst of this case. Specifically, Plaintiff worked with counsel to file the complaint, answered discovery, sat for deposition, and assisted with the litigation as appropriate. His efforts greatly benefited the Class. Class Counsel requests that the Court award Plaintiff an incentive payment of $15,000.00 for his efforts on behalf of the class. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000.00 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives).

Additionally, at final approval, Class Counsel will petition the Court to approve its request to pay attorneys' fees equal to one third of the non-reversionary Settlement Fund. This amount is within the approved range in class actions. *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005)

(approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of recoveries in class actions).

The Seventh Circuit recognizes that the attorneys' contingent risk is an important factor in determining the fee award. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 362-63 (affirming award of 38% of $20 million), *citing Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

Where lawyers working on a contingency basis in the relevant community typically charge one-third of any recovery to a private client, this shows that a similar fee is appropriate in a contingency class action. Id.; *see also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008).

Here, Class Counsel's request for one third of the Settlement Fund is within the market rate for TCPA cases. *See, Shaun Fauley v. Heska Corporation,* 1:15-cv-02171 (N.D. Ill. February 28, 2019) (Doc. 159)(awarding one third of fund); *G.M. Sign, Inc. v. Stealth Security Systems, Inc.*, No. 14-cv-09249 (N.D. Ill. August 10, 2018) (Doc. 80)(same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (same); *Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Doc. 31) (same); *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10- cv-10996 (E.D. Mich. Nov. 2, 2016) (Doc. 120) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-cv-10010 (E.D. Mich. Apr. 5, 2015) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D.

11

Ohio Feb. 9, 2016) (Doc. 73) (same); *Sandusky Wellness Center v. Heel, Inc.*, Case No. 12-CV-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis. July 19, 2013) (35% fee).

Defendant takes no position on Plaintiff's request to pay from the Settlement Fund a fair and reasonable amount for attorney's fees and costs equal to one third of the Settlement Fund ($2,000,000.00) plus reasonable out-of-pocket expenses. Class Counsel undertook this case on a contingency basis, and achieved an excellent result and maximum payout in a fair and efficient manner.

Class Counsel resolved this case through unique capabilities from his years of experience in these types of cases. As indicated above, Class Counsel has been litigating TCPA class actions since 2003.

If the Court finds that the settlement is fair, reasonable, and adequate, then Class Counsel will ask the Court to approve the payment of fees to Class Counsel in an amount equal to one third of the Settlement Fund.

## VI. THE COURT SHOULD APPROVE NOTICE TO THE SETTLEMENT CLASS

The Parties propose to issue notice by facsimile to the known Class Members, and if the facsimile fails after three (3) attempts, then by postcard notice substantially in the form of Exhibit 2 to the Settlement Agreement via U.S. mail to addresses indicated in Defendant's records that is associated with each of the fax numbers. A copy of the proposed notice is attached as Exhibit 2 to the Agreement.

The parties further propose posting of Complaint, Settlement Agreement, Preliminary Approval Order, and Notice on the Settlement Website, which shall also contain a copy of the facsimile advertisement at issue.

Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

Rule 23 (e)(i)(B) requires that notice of a settlement be provided "in a reasonable manner." Here, the parties have agreed to a reasonable manner of notice by sending it to the fax numbers of the Known Class Members and if unsuccessful after three (3) attempts, by postcard via U.S. mail.

The contents of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the notices satisfy these requirements. Agreement at Ex. 2.

The notices meet the legal standards for appropriate notice and satisfy Rule 23 (e). Therefore, the Court should approve the proposed notices and authorize their dissemination to the Class.

## VII.   THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

Plaintiff requests that the Court schedule a final fairness hearing to determine whether the settlement should be finally approved. A proposed Final Approval of Agreement and Judgment is attached as Exhibit 3 to the Agreement.

## VIII.   CONCLUSION

This is an excellent settlement for the Class. Class Members do not have to do anything as all who do not opt out or exclude themselves will be mailed a check for their net statutory damages. Plaintiff respectfully requests that the Court enter a Preliminary Approval Order in the form attached

as Exhibit 1 to the Agreement, granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Agreement), and setting dates for opt-outs, objections, and a final approval hearing.

BY:  /s/ Brian J. Wanca
Brian J. Wanca
Ross M. Good
Ryan M. Kelly
Wallace C. Solberg
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Phone: 847-368-1500
Facsimile:  847-368-1501

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification of such filing to all counsel of record.

/s/ Brian J. Wanca