IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAUN FAULEY, individually and as the representatives of a class of similarly- situated persons,<br><br>      Plaintiff,<br><br>  v.<br><br>DRUG DEPOT, INC. a/k/a APS PHARMACY,<br><br>      Defendant. | No.  1:15-cv-10735<br><br>Hon. Virginia M. Kendall |

**PLAINTIFF'S MOTION AND SUPPORTING MEMORANDUM FOR
FINAL APPROVAL OF SETTLEMENT OF PREVIOUSLY CERTIFIED CLASSES**

  Plaintiff, SHAUN FAULEY ("Plaintiff"), on behalf of himself and the settlement class of similarly-situated persons ("Settlement Class"), requests that the Court enter an order finally approving the parties' Settlement Agreement (the "Settlement" or the "Agreement"). Doc. 207-2. The proposed *Final Approval Order and Judgment* is attached hereto as Exhibit C and will be submitted to the Court in electronic format under the "proposed order" procedures.

    **I.**  **Prior preliminary approval and dissemination of notice.**

  On November 26, 2019, the Court held a hearing on Plaintiff's *Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice to the Settlement Class*. After consideration of the Settlement Agreement and the parties' proposed class notice plan, the Court entered an order preliminarily approving the settlement, ordering notice, and setting various deadlines and a date for a final approval hearing (the "Preliminary Approval Order"). Doc. 210.

  In accordance with that Order, Plaintiff caused the class notice to be sent to the fax numbers of the Known Class Members, and if the fax was unsuccessful after three attempts, then by U.S. Mail to the mailing address found to be associated with  the  particular  fax  number.

Declaration of Dorothy Sue Merryman ("Merryman Declaration"), Exhibit A.

## II.     Background and summary of the settlement.

On November 30, 2015, Plaintiff filed a Class Action Complaint in this Court alleging claims regarding fax advertisements sent by Drug Depot, Inc. a/k/a APS Pharmacy. ("Drug Depot" or "Defendant"). Plaintiff alleged that Drug Depot had sent unsolicited advertisements to Plaintiff and a class of others by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

The case proceeded through written and oral discovery. On January 29, 2018, the Court entered an order granting Plaintiff's motion for class certification and certifying the class. (Doc. 133). Through discovery in this case, Plaintiff had determined and contended that Defendant sent in excess of 78,500 advertisements by facsimile from February, 2012 through April, 2015 to 7,482 unique fax numbers.

On September 6, 2019, the parties engaged in a day long mediation led by the Hon. James Holderman (Ret.) of JAMS. With continuing negotiations for weeks thereafter, Plaintiff and Defendant were able to reach an agreement to settle this case on a class-wide basis. The Court granted preliminary approval of the proposed class settlement on November 26, 2019. Doc. 210.

The key terms of the Settlement are as follows:

(a)     The Class. On January 29, 2018, the Court certified the following Class, pursuant to Federal Rule of Civil Procedure 23(b)(3):

**Class A**
All persons or entities who were successfully sent a Fax stating, "APS Pharmacy," and containing the phrase "Fax Order To: (727) 785-2502," on July 22, 2013, and on September 30, 2013.

**Class B**

All persons or entities who were successfully sent a Fax stating, "APS Pharmacy," and containing the phrase "Fax Order To: (727) 785-2502," on February 27, 2012, March 7, 2012, March 30, 2012, June 4, 2012, August 20, 2012, January 25, 2013, February 11, 2013, February 18, 2013, February 28, 2013, March 25, 2013, March 26, 2013, March 27, 2013, March 28, 2013, March 29, 2013, May 14, 2013, June 24, 2013, July 1, 2013, July 22, 2013, August 5, 2013, September 30, 2013, March 18, 2014, August 8, 2014, April 27, 2015.

    (b)    <u>Class Counsel and Representative Plaintiff</u>. The Court appointed Plaintiff as the "Class Representative" and Brian J. Wanca of Anderson + Wanca as "Class Counsel," by agreement. Doc. 210, ¶ 2.

    (c)    <u>Monetary Relief to the Members of the Settlement Class</u>. Defendant, through its insurer, MSA Insurance Company, agreed to create a settlement fund of $6,000,000.00 (the "Settlement Fund"). Doc. 207-2 at ¶ 6. Pursuant to the terms of the settlement, each class member will receive its *pro rata* share of the Settlement Fund, net of attorneys' fees, litigation expenses, including Class Administration, and incentive award awarded by the Court. *Id.,* ¶ 10.

    (d)    <u>Class Notice</u>. The Class was notified about the settlement in the manner ordered by this Court, by sending the notice to the Class Members by facsimile, and if facsimile transmission was unsuccessful after three (3) attempts, by postcard via U.S. mail to the addresses for such Class members indicated in the class list received from Defendant. The Notice included instructions about opting out or objecting to the settlement, and how to submit any corrected address information. Exhibit A, Ex. 1 thereto. The settlement administrator also posted the class notice on the Settlement Website.

    (e)    <u>Uncashed Checks</u>. By agreement of the parties and included in the settlement terms, and subject to the Court's approval, any money from uncashed checks will be donated/paid *cy pres* to Equal Justice Initiative Doc. 207-2, ¶¶ 6, 15. The Settlement Class members were clearly notified of this fact and that they had the option to have their settlement payment donated

3

to Equal Justice Initiative by simply declining to cash their settlement check. The Notice informed the Settlement Class about Equal Justice Initiative and provided the website of the organization in the event Settlement Class members wanted to obtain further information. Specifically the Notice to the Settlement Class provided:

> **IF YOU DO NOT CASH THE SETTLEMENT CHECK WITHIN 90 DAYS OF THE DATE ON THE CHECK, THEN THE AMOUNT OF THE SETTLEMENT CHECK WILL AUTOMATICALLY BE DONATED TO EQUAL JUSTICE INITIATIVE.** Equal Justice Initiative is a 501(c)3 nonprofit organization that provides legal representation to persons who may have been wrongly convicted of crimes, poor persons without effective representation, or others who may have been denied a fair trial. Further information regarding Equal Justice Initiative may be found at www.eji.org. **If you want your settlement check to go to EQUAL JUSTICE INITIATIVE then simply destroy the settlement check and the amount of your check will be automatically donated to Equal Justice Initiative.**

No Class members objected to this provision and as indicated Equal Justice Initiative is a nonprofit organization that provides legal representation to persons in need. Settlement Class members were clearly informed that they had the option to refuse to negotiate their settlement check and thereby make a donation to Equal Justice Initiative.

(f) <u>Settlement Class Opt-Out and Objection Rights</u>. The class notice informed class members of their opportunity to request exclusion from the Settlement Class. <u>Exhibit A</u>, Ex. 1. The notices also informed class members about their right to object to the settlement. Two (2) members of the Settlement Class requested exclusion. <u>Exhibit A</u>. No Settlement Class Member objected. See Declaration of Susan C. Vega, <u>Exhibit B</u>.

(g) <u>Release</u>. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought in this action against Defendant and the other released parties about the fax advertisements at issue. Doc. 207-2 at ¶

16. Defendant will also release claims against Plaintiff, Class Counsel, and all Class Members from any claims arising out of the prosecution of the action. *Id.*

  (h)  Cost of Settlement Administration. Pursuant to the Settlement, the costs of settlement administration shall be paid to the Settlement Administrator within seven (7) business days of the Effective Date. *Id.,* ¶ 15.

  (i)  Incentive Award and Attorneys' Fees and Expenses. Class Counsel asks the Court to approve an award of $15,000.00 from the Settlement Fund to Plaintiff for serving as the class representative. *Id*., ¶ 11. Plaintiff's counsel also request an award of attorney's fees equal to one third of the Settlement Fund ($2,000,000.00), plus reasonable out-of-pocket expenses. *Id*. The class notice informed the class members of these requests and none objected. Exhibit B.

  **III. The Settlement Class was reasonably and adequately notified about the settlement.**

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23 (e) (1). Notice of the settlement must satisfy due process. *Maher v. Zapata Corp*., 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Orders, Plaintiff sent the notice to the known Class Members via fax, and if unsuccessful after three attempts, by U.S. Mail. Exhibit A. The Seventh Circuit has agreed that fax and mail notice is reliable and appropriate in TCPA fax cases. *See, Physicians Healthsource, Inc. v. A-S Medication Sols., LLC,* ---F.3d ---, 2020 WL 881329 (7th Cir. Feb. 24, 2020). 6,403 class members were successfully notified by fax, and 925 of the 1,079 remaining class members were successfully notified of the settlement by mail. *Id.*, ¶¶ 10, 14. Overall, the notice plan

reached 7,328 of the 7,482 Class Members (nearly 98%). *Id.*, ¶ 15.

In addition, the content of the parties' notice complied with Rule 23 (c) (2) (B), which requires that a class notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." The class notices stated all of those things. Exhibit A, at Ex. 1.

## IV. The Court should approve the settlement.

### A. Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002). It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

### B. Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.

Courts typically consider the following factors in evaluating a class action settlement: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby*, 75 F.3d at 1198-1199. Here, these factors show the

settlement should be approved.

### 1. **Strength on the merits compared to the settlement amount.**

Defendant's ability to pay a settlement or judgment was a key driving factor in settlement. Plaintiff has concluded that it was unlikely that Defendant would be able to pay significantly more than the $6,000,000.00 settlement fund, which is being funded through its insurer, MSA Insurance Company, without creating significant financial difficulties for its continued operations. MSA has three (3) insurance policies, each with $2,000,000.00 in limits, which provide coverage for this case. MSA is paying the full policy limits on each of the three (3) insurance policies.

Plaintiff believes that he has a strong case. The Court certified the Class and the matter would proceed to a summary judgment, and if denied, be set for trial. Defendant believes it would prevail on its defenses including that the Class members provided consent to receive the advertisements by fax, that the Court should apply *Bristol Meyers* and limit the class to Illinois residents only, that Defendant has an EBR, that it had consent of the Class because consent was obtained through the EBR, and therefore the Class should be decertified. Defendant filed a Motion for Reconsideration of the Court's January 29, 2018 Order granting class certification which was denied. Defendant also filed a Rule 23(f) petition requesting the Seventh Circuit to review the decision granting class certification, which was also denied. Defendant asserts that it would be successful in getting substantial evidence of consent by Class members to receive faxes, which up to this point the Court has excluded, as evidence on damages which would then later justify a motion for decertification of the Class. While Plaintiff does not believe Defendant will succeed in obtaining the decertification of the Class or that it will prevail on any of the other defenses and issues it has raised, nevertheless, results

are unpredictable. Defendant has retained defense counsel that are funded by Defendant's insurer and who have indicated they will vigorously defend this case if a settlement is not achieved.

The TCPA gives private citizens a right to sue to recover the greater of actual monetary damages or $500.00 in damages. Thus, a victory by Class could result in a judgment amount of $39,268,000.00 (based on the number of faxes), or $3,741,000.00 (based on the number of class members). If Plaintiff were to be successful in obtaining such a judgment, it would almost certainly spell financial ruin for Defendant and the Settlement Class would likely recover no more than the $6,000,000.00 in insurance policy limits.

Under the settlement, every Class Member who has not been excluded from the Class will receive their *pro rata* share of the Settlement Fund less amounts awarded as fees, expenses, and incentive award. Doc. 207-2 at ¶ 10. As noted above, any money remaining in the Fund as a result of checks issued to Settlement Class members but not cashed is to be paid to Equal Justice Initiative, as approved by the Court. None of the Settlement Fund will revert to or be retained by Defendant.

  2. **Defendant's ability to pay.**

In the context of a class-wide settlement, courts typically consider the defendant's ability to pay. *See Hispanics United of DuPage County v. Addison, Illinois*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997) (Castillo, J.). As stated above, Defendant's ability to pay a settlement or judgment was a key driving factor in settlement. Plaintiff has concluded that it is unlikely that Defendant would be able to pay significantly more than the $6,000,000.00 settlement fund, which is being funded through its Insurer, MSA Insurance Company, at full policy limits on each of the three (3) insurance policies.

8

3. **The complexity, length, and expense of further litigation.**

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). There is no exception here. Defendant would otherwise vigorously oppose the claims asserted in Plaintiff's Class Action Complaint, and further litigation of the underlying claims against Defendant in this Court, or on appeal, would be expensive for the Settlement Class and would not move them closer to collecting any compensation. On the other hand, if this action is settled, the Settlement Class can obtain recovery from the Settlement Fund without further litigation. Because of the significant costs that class actions can involve for both parties, courts consider the savings that would result from settlement of the case. *Isby*, 75 F. 3d at 1198-99 (holding that settlement was outcome "comparable if not far superior," to that which the Plaintiffs might achieve at trial because continuous litigation would require "resolution of many difficult and complex issues and would entail considerable additional expense") (quoting *Tafia v. Bayh*, 746 F. Supp. 723, 727 (N.D. Ind. 1994)).

4. **Opposition to the settlement.**

A low rate of opt-outs or opposition reflect favorably on a settlement. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected).

Here, the class members overwhelmingly support the settlement. This is evidenced in that no class members objected to the settlement and only two (2) of the approximate 7,842 class

members chose to opt out. Exhibits A and B.

5. **Absence of collusion.**

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). Here, the settlement record, including mediation with Judge Holderman, proves that the settlement is not the product of collusion. Settlement was reached only after mediation.

6. **Opinion of counsel.**

Plaintiff and his counsel have concluded that the terms and conditions provided for in this Agreement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Plaintiff's counsel have substantial experience litigating class actions, claims about unsolicited faxes, and about TCPA insurance coverage issues. They have been appointed class counsel in dozens of cases. *See, e.g., Shaun Fauley v. Heska Corporation,* 1:15-CV-02171 (N.D. Ill); *Hinman v. M&M Rental, Inc.*, Case No. 06-CV-1156 (N.D. Ill.); *Am. Copper & Brass, Inc. v. Lake City Industrial Prod., Inc.,* 757 F.3d 540,454 (6th Cir. 2014); *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC,* 1:12-CV-05105 (N.D. Ill); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08-CV-5953 (N.D. Ill.); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09-CV-1399 (N.D. Ill.); *Holtzman v. CCH*, 07-CV-7033 (N.D. Ill.); *CE Design, Ltd. v. Exterior Systems, Inc.*, 07-CV-66 (N.D. Ill.). Under these circumstances, the Court should give weight to Class Counsel's opinions about the settlement.

7. **Stage of proceedings and amount of discovery.**

The stage of proceedings and amount of discovery supports final approval. This case is sufficiently advanced for the parties to be able to appreciate the strengths and weaknesses of

their respective cases and of factors such as Defendant's ability to pay a settlement or judgment. Plaintiff was able to identify the class members through discovery and identify the circumstances surrounding the subject faxing campaign. Plaintiff prevailed on a contested Rule 23 motion and completed written and oral discovery. As a result, the parties have completed necessary discovery, and exchanged documents and data sufficient for Plaintiff and its attorneys to evaluate the strength of this case.

## 8. Public interest.

Courts have held that a settlement of class action litigation serves the public interest. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980). Here, some class members chose to claim a monetary award, while the others—those who did not opt out—chose to stay in the class and enjoy the prospective relief of not receiving future faxes. Based upon the foregoing, as well as upon the judgment of experienced class counsel, Plaintiff requests that the Court approve the proposed settlement.

## V. Attorneys' fees and costs from the Settlement Fund are appropriate.

Under the terms of the Agreement, Defendant will pay Plaintiff's attorney fees of one third of the non-reversionary Settlement Fund—$2,000,000.00—plus litigation expenses, including settlement administration. Doc. 207-2 at ¶ 11. Like the class members, Defendant does not object to Plaintiff's request for these amounts, nor will Defendant appeal any award of these amounts. The U.S. Supreme Court has held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Courts have long recognized that the attorneys' contingent risk is an important factor in

determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 362-63 (affirming award of 38% of $20 million), *citing Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

Where lawyers working on a contingency basis in the relevant community typically charge one-third of any recovery to a private client, this shows that a similar fee is appropriate in a contingency class action. *Id.*; *see also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008). The market for legal services paid on a contingency basis shows the proper percentage to apply in a class action that creates a common fund for the benefit of the class. *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir.1992). Where lawyers working on a contingency basis in the relevant community typically charge one-third of any recovery to a private client, this shows that a similar fee is appropriate in a contingency class action. *Id.*; *see also Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions); *Gaskill*, 160 F.3d 361 (awarding 38% of the fund as fees).

Moreover, the agreed percentage falls within the market for cases involving claims about unsolicited faxes and TCPA claims. *See, e.g., Shaun Fauley v. Heska Corporation,* Case No. 1:15-CV-02171, (N.D. Ill. Feb. 28, 2019) (Doc. 159) (awarding one-third of fund); *G.M. Sign, Inc. v. Stealth Security Systems, Inc.*, Case No. 14-C-9249 (N.D. Ill. Aug. 10, 2018) (Doc. 81) (same); *The Savanna*

*Group, Inc. v. Trynex, Inc.,* Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (Doc. 243) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.,* No. 08-CV-5953 (N.D. Ill. Nov. 1, 2010) (Doc. 146) (same); *Saf-T-Gard International, Inc. v. Seiko Corp. of America,* No. 09-CV-0776 (N.D. Ill. Jan. 14, 2011) (Doc. 100) (same); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* No. 09-CV-1399 (N.D. Ill. May 26, 2011) (Doc. 140) (same); *Holtzman v. CCH,* No. 07-CV-7033 (N.D. Ill. Sept. 30, 2009) (Doc. 33) (same); *CE Design, Ltd. v. Exterior Systems, Inc.,* No. 07-CV-66 (N.D. Ill. Dec. 6, 2007) (Doc. 39) (same).

The Settlement Agreement's attorneys' fees and expenses provision is reasonable and proper under either the lodestar or the percentage method and should be allowed. In addition, Defendant agreed to pay Plaintiff's out of pocket expenses. The Court should allow those as well.

Class Counsel undertook this case on a contingency basis and achieved an excellent result in a fair and efficient manner. Class Counsel resolved this case through unique capabilities from their years of experience in these types of cases. As indicated above, Class Counsel have been litigating TCPA class actions since June 2003. If the Court finds that the settlement is fair, reasonable, and adequate, it should approve the payment of fees to Class Counsel out of the funds being distributed to the class which is equal to one third of the Settlement Fund plus out of pocket expenses.

**VI.   The requested incentive payment to Plaintiff is appropriate.**

If the Settlement is approved, Defendant has agreed to pay Plaintiff $15,000 from the Settlement Fund for serving as the class representative. Doc. 207-2 at ¶ 11. Incentive fees are appropriate to reward class representatives who have pursued claims on behalf of the class. *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992). "In deciding whether such an award is warranted, relevant factors include the actions the Plaintiff has taken to protect

the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the Plaintiff expended in pursuing the litigation." *See Cook v. Niedert, et al.*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Plaintiff was the catalyst of this case. Specifically, Plaintiff worked with counsel to file the complaint, answered written discovery, sat for deposition and attended the mediation and a prior settlement conference with Magistrate Judge Rowland. His efforts greatly benefited the Class. Class Counsel requests that the Court award Plaintiff an incentive payment of $15,000.00 for his efforts on behalf of the class. The award is justified by Plaintiff's efforts and determination to push the case to a successful resolution for the entire Class. Judges have approved similar awards in other class litigation. *See, e.g., Cook,* 142 F.3d at 1016 (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives). Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton;* 236 Ill. App. 3d 486, 497, *citing* C. Krislov, Scrutiny of the Bounty: Incentive Awards for Plaintiff in Class Litigation, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The class representative in this case was no exception. But for Plaintiff's initiative and participation – the benefits available to all Class members would not have been realized.

### VII. Conclusion.

WHEREFORE, Plaintiff respectfully requests that this Court enter the final approval order in the form attached as <u>Exhibit C</u> and submitted herewith.

14

By: /s/   Brian J. Wanca

Brian J. Wanca
Ryan M. Kelly
Ross M. Good
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Phone: (847) 368-1500
bwanca@andersonwanca.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on March 31, 2020, he caused the foregoing to be filed using the Court's CM/ECF system, which automatically serves a copy upon each counsel of record.

/s/ Brian J. Wanca